**Roberto SILVA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 52953.**

Court of Criminal Appeals of Texas.

Feb. 16, 1977.

John A. Pope, III, Rio Grande City, for appellant.

Arnulfo Guerra, Dist. Atty., Glenn H. Ramey, Asst. Dist. Atty., Rio Grande City, Jim Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of murder without malice, under the former Penal Code (1925); the punishment is imprisonment for 5 years.

The appellant complains that the evidence is insufficient to support his conviction for the murder of Francisco Chapa, and he asserts that the evidence conclusively shows that he acted in self-defense. He also asserts that a statement made by Francisco Chapa, prior to his death, was erroneously admitted in evidence as a dying declaration.

In the evening, on January 21, 1973, a number of persons had gathered at a small "beer joint" known as the Riverdale Inn; the appellant and Francisco Chapa were among those patronizing the place. There was some evidence offered of prior difficulties between Chapa and the appellant and his brothers. The evidence is rather meager and somewhat in conflict as to what precipitated the difficulty immediately prior to the time that Chapa was shot. There is some conflict in the evidence as to whether Chapa put the appellant and his brother out of the "beer joint," or whether the brothers went outside and called to Chapa to come out. In any event, Chapa went outside and there is evidence he, with his fists in a fighting position, approached the appellant and his brother. The appellant fired four or five shots toward Chapa. Chapa was wounded in the chest, stomach, and hands. He was immediately taken to a hospital where he remained in the intensive care unit for eight days before he died as a result of the wounds which he had received.

The jury was charged on the law of self-defense. We find the evidence amply sufficient to support the conviction, and the issue of self-defense, which was an issue of

fact, was resolved by the jury against the appellant.

■ Chapa's wife went to the hospital and several hours after the shooting had occurred she had a conversation with her husband. She was permitted to testify that her husband said: "That these boys, these, men, had planned an ambush for him, that Domingo had gone in the tavern, called him out, made conversation, took him out, then just right from here came Roberto shooting at him and Domingo at the same time and shots through the back from Mariano." Domingo and Mariano were brothers of the appellant.

It is the appellant's contention that Chapa's statement was not shown to be a dying declaration, its admission was a violation of his constitutional rights, and it was inadmissible because it was an opinion or conclusion. The deceased's wife testified that her husband appeared to be "sane," "normal;" she did not ask him any questions, and his statement was voluntary. She said she, in fact, attempted to get him not to talk in order to aid his recovery. Chapa had just been through an emergency operation, and the attending physician said that he had been honest with Chapa and his wife and that his prognosis for Chapa's recovery was not good because of the vital organs which had been injured. The physician testified that he told Chapa and his wife that Chapa's condition was serious, they were going to try to do everything possible, but they "were not sure he was going to make it." Prior to making the statement Chapa told his wife that he was very sick; that he was not going to make it.

We find that there was a sufficient evidentiary predicate for the admission of Chapa's statement as a dying declaration. See Article 38.20, V.A.C.C.P.;[1] *Munoz v. State,* 524 S.W.2d 710 (Tex.Cr.App. 1975); *Whitson v. State,* 495 S.W.2d 944 (Tex.Cr.App. 1973); *Arseneau v. State,* 145 Tex.Cr.R. 587, 171 S.W.2d 132 (1943); *Walker v. State,* 227 S.W. 308 (Tex.Cr.App. 1920).

The statement was admissible in evidence as a dying declaration, which is a well recognized exception to the hearsay rule. Its admission was not a violation of the appellant's constitutional rights. See *Burrell v. State,* 18 Tex. 713 (1857); *Taylor v. State,* 38 Tex.Cr.R. 552, 43 S.W. 1019 (1898); *Payne v. State,* 45 Tex.Cr.R. 564, 78 S.W. 934 (1904); McCormick and Ray, Texas Evidence, Sec. 973.

■ The statement that the appellant and his brothers had ambushed the declarant was not an inadmissible opinion or conclusion, but was, rather, a shorthand rendition of facts such as those that have been held admissible as a part of a dying declaration. See *Tucker v. State,* 141 Tex.Cr.R. 428, 148 S.W.2d 1111 (1941); *Fults v. State,* 83 Tex.Cr.R. 602, 204 S.W. 108 (1918); *Gaines v. State,* 56 Tex.Cr.R. 631, 127 S.W. 181 (1910); *Craft v. State,* 57 Tex.Cr.R. 257, 122 S.W. 547 (1909); *Pierson v. State,* 21 Tex.App. 14, 17 S.W. 468 (1891). We have considered the authorities cited by the appellant and find that they may be distinguished on the facts.

The judgment is affirmed.

*Opinion approved by* the Court.

1. Article 38.20, V.A.C.C.P., provides:

"The dying declaration of a deceased person may be offered in evidence, either for or against a defendant charged with the homicide of such deceased person, under the restrictions hereafter provided. To render the declarations of the deceased competent evidence, it must be satisfactorily proved:

"1. That at the time of making such declaration he was conscious of approaching death, and believed there was no hope of recovery;

"2. That such declaration was voluntarily made, and not through the persuasion of any person;

"3. That such declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement; and

"4. That he was of sane mind at the time of making the declaration."